Thank you. Good afternoon. Good afternoon. It would please the court. My name is Thomas Brandon. I'm representing Petitioner Arvind Gallo, and I would respectfully like to reserve three minutes for debate time. The Board of Immigration Appeals erroneously determined that Petitioner had not established that there is a nexus between the events he described and any persecution to the applicant personally, on account of a protected ground under the Act. And the Board, in making that statement, is referring to the November 1999 incident in which Petitioner's friend and fellow youth group member was murdered. I would like to begin by pointing out the two most critical errors the Board made in denying a route to Petitioner. The Board erred by failing to consider evidence of a pattern or practice of persecution of others similarly situated to Petitioner. And the second point, the Board dismissed all Petitioner's incidents of past persecution because he allegedly stated he did not feel individually threatened. The Board failed to consider that Petitioner can establish a well-founded fear of persecution, even if he has not been individually targeted by his judge, shall not require the applicant to provide evidence that he would be singled out for persecution if, A, the applicant establishes there is a pattern or practice of persecution of groups similarly situated to the applicant on account of one of the five grounds, and B, the applicant establishes his own inclusion within that group such that his fear is reasonable. In the instant case, Petitioner established a pattern and practice of persecution against other youth group and Democratic Party members. And this evidence includes the 1998 State Department report, which the Board mentioned in its decision. The Board stated, We observed that earlier State Department reports of record discussed such political violence. The 1998 report discusses numerous attacks and murders of Democratic Party members which were politically motivated. Given this fact, we cannot conclude that political violence is outside the realm of possibility. And that's in the record, that's in the BIA's own decision. I thought that his father and his family left Albania and that he followed soon after, is that correct? Your Honor, that was actually an important part of the case. He declined to immediately go with his family. First, tell us the threats against the father and the family. Your Honor, the father, let's see, in August 2006, this is against the Petitioner, this is one of the incidents against the Petitioner. In August of 2006, they were at a coffee shop discussing youth group activities and a mass police officers came in, pulled them out, put them in a van, beat them, detained them, accused them of negatively affecting the youth in the area and they released them later in the morning. In September 98, two men ransacked Petitioner's family's home and took Petitioner's father to the police station. He was detained for three days and he was beaten and tortured by masked men, presumably police officers. In April 1999, Petitioner himself was demonstrating in Miros. Officers stopped him, put him on the wall, searched him, hit him on the head with his rifle. He was beaten and kicked and he was specifically warned to end his membership with the Democratic Party and to tell his dad, who was rather politically well known, what had happened. And then in May 1999, the father began to receive phone threats, threatening to kidnap his son if he did not switch his support to the Socialist Party. And it was at that point that the family decided to leave. Now, your claim for persecution is based on political opinion, not on witnessing the murder. Correct, your honor. I think the board took it a step. They focused on the fact that he witnessed the murder and that that's a crime. But if you back up, you had three youth who were long-time members of the youth group, active members, all sharing relatively the same position within the group. Although they weren't elected leaders, they had leadership roles. They were actually on their way to a meeting to discuss future demonstrations when this one of their members was actually killed. I believe right then and there, the petitioner, as soon as his friend was killed and he looked at his friend and saw that could be me. This is a person similarly situated to me, did the same exact thing politically as me, murdered right before my eyes. The court, the board never considered that. They simply went a step further. Did they misapprehend the testimony or did they ignore the testimony or did they? I think they latched on to the fact that the subsequent threat, you could say the petitioner had two fears. He feared being murdered like his friend for political reasons. He also had a fear which the board seized on that he could be killed because he was a witness. It wasn't improper for the board to look at that, but it was improper for the board to ignore the other aspects of what happened on that day. You don't state it in so many words in your brief, but aren't you really arguing that the error here was that the board failed to apply the mixed motive framework to this case? They did fail to apply the mixed motive, but Your Honor, I think the other argument is a little stronger. I think they did, that there was clearly a pattern of practice of persecution of other similarly situated. And in fact, if I may, Your Honor, the board points to this in its decision. My client had a credibility issue that was overturned by the board and the reason the board did that, they said that we observe that earlier reports of record dating from the years closer to the time when the applicant and his family members had difficulties do discuss such political violence. The 1998 report discusses numerous attacks and murders of Democratic Party members which were politically motivated. That's clear evidence of others similarly situated being persecuted for their political opinion. You can win your case on that alone, Your Honor. Not to mention the other incidents that we described earlier that happened to the petitioner's father and himself. I think the board negated those previous instances of persecution because the respondent didn't leave. They claimed that he did not did not have an individual fear, but I don't think that's completely accurate. If you look at, let's see, he stated that if you look in the record on page 1 43 and 1 45, he stated that he did feel intimidated by these earlier events, but that he considered them obstacles that he needed to overcome in order to try to bring democracy to Albania. These were things that he was willing to fight for, even though he was scared. I don't feel having made that type of a truthful statement, all the previous instances of persecution should be swept away. There's no case law or anything to support that, no regulations to support that that I'm aware of, and yet that's exactly what appears to happen. Good. Anything else? Well, why don't you save your additional time? You've got almost four minutes left. Why don't you save that for the next panel? Good afternoon. My name is Nancy Friedman for the respondent attorney general. First of all, I must admit I was a little bit surprised to hear the counsel for the petitioner discuss a pattern and practice. I did not understand that they were even raising that issue to the court because they did not raise that type of issue in their brief to the court, and so I do not believe that issue is before the court. But as the court raised a few moments ago, I think the key issue today is whether the petitioner could establish any nexus between what happened after he witnessed the murder and persecution. And as the board concluded, even if you take the petitioner's story as true, there just is no nexus to believe that he was targeted based on any political opinion. He was the witness to a crime. What about all of the incidents that occurred before that? Are we to ignore that? Certainly not, your honor. Of course, the court will look at the record as a whole, and doing that, we come to the same conclusion as the board did. And in this case, there was a very detailed When you examine exactly what the petitioner claims happened to him, excluding the incident where he witnessed his friend's murder, but prior to that, here's exactly what happened to him. In his affidavit at 228 of the record, he discusses an incident that happened in August of 1996. I think the petitioner's counsel mistakenly referred to it as 2006, but in 1996, he said he was taken into a van and held overnight. So that was one incident he described in 1996. Then in 97, he said he began his activity with Democratic Party, but doesn't claim anything happened to him, any harm or threats or otherwise, until we get to the April 1999 incident where he said he had participated in the demonstration with about 60 people or so. He apparently was in the front row or the front of the demonstration and was arrested and hit in the head. The next month in May 1999 is when he says his father got threats over the phone, and I guess got a number of threats, according to petitioner's Well, actually, I should have added that in May 1999, his father gets some telephone threats, and then September 24th, 1999 is when his father and the rest of the family decided to leave for Greece. That's important because it happened time-wise after petitioner had already participated in this April 1999 incident, this demonstration where he said he was hit. His father gets some phone threats, and the family decides to leave the country in September of 1999. He could have gone with his family, he says, but he didn't feel threatened at that time and decided to remain in the country. So that's important to note sequentially. And then in November of that same year, 1999, is when he witnesses his friend's murder, and he himself is clear, the record evidence is clear. I'm looking at his affidavit at 229. First of all, there's a couple of leaps and assumptions that the petitioner is trying to make here. Number one, they're taking a giant leap by saying that the friend was murdered because he was a member of the Democratic Party. We don't have any evidence of that other than what the petitioner says in his affidavit, and says that's the only reason he could imagine he was killed. So that's one thing. Then the next day after the murder, the criminal came to his grandfather's house. I'm sorry, it was later that same evening when the criminal who knew the petitioner had seen him and could identify him came to his grandfather's house and threatened him. It says, they told my grandfather that I had seen too much and that I was a witness who could cause trouble. So that's why the board concluded that there was just no evidence that he was threatened and targeted and so on based on his political opinion. Even if you look at that Why do you look at an isolated incident? If in fact, if he were credible that he had been threatened because of his political affiliations, that he had been beaten up, that his father, who was a fairly high functionary in the party that was being prevailed upon by the old regime, felt threatened enough to leave the country and his friend got, if you credit his statement that his friend was killed for for the same political reasons, why isn't that sufficient? Because your honor, I think that there's a significant difference between finding the and taking a leap in and speculating as to why certain things happened. Even if we believe what the petitioner testified to, that he could only assume his friend was murdered because of his same day that he he's again assuming that the person who shot his friend knew about the petitioner's political opinion. We don't know that. We again have, even if you find petitioner credible as the board did, it's still not the same thing as finding a motive and a nexus and that that's the critical distinction here. So certainly the evidence in this case does not compel a result different from what the board found because as this court has recognized many times, such as in the Lee case, LIE, the motive is critical and as the board correctly determined there was no nexus, no reason to believe he was targeted because of any political opinion and any incidents did not rise to the level of persecution here. So unless the court has any other questions. Do you think that's an accurate recitation of the facts that there was no evidence that any of the activities were based on political any, any of the persecution or any of the animus was based on political activities? I just want to make sure I understand. You said the board found that there was no evidence not that there was a little bit of evidence, but there was no evidence that any of this was politically motivated. Let me go back for a second just so I can be accurate in what I'm saying. Well, as the board said, the evidence indicated he was being sought by the murderer because he was a witness to the crime. And what, what the board said prior to that is they found that there was no nexus between the events he described and any persecution on account of his protected ground. Okay. Wasn't the error here though that the, the, the board and the IJ failed to apply the mixed motive framework to this case and trying to assess whether or not there was a motive for the persecution. Isn't that the fundamental error in this case that they focused everything on the murder and on, on the totality of everything that had happened. You began your argument objecting to the pattern. I'm not sure exactly what you were talking about when you objected to that, but clearly in the part of the petitioner's case throughout has been his involvement with the democratic party as well as his witnessing this murder. Right. And so I get back to my question is, isn't the fundamental error the way in which the board, even after they found him credible that the board failed to apply that mixed motive framework? No, your honor. I, I don't believe that that's the case in this situation because I think the board found the motive clearly based on what did they find the motive to be that he was a witness to a crime who could identify the murderer. But shouldn't they, based on what was presented to them, uh, also looked at the political opinion of him being part of the party and having his father's involvement, his involvement, his friend's involvement, uh, in addition to the fact that he also saw a murder. Well, the problem is as, as the board stated, and I think that, you know, the record evidence certainly, uh, supports that is, is there was no nexus between those two things. And that's, that's the key problem. No nexus between what two things? Between whatever political opinion he had and the fact that the, the murderer broke into his apartment and threatened him after his friend was murdered. Okay. But it wasn't the, but, but okay, but it wasn't the fact, didn't the board err though in not looking at the different framework, the mixed motive framework and coming to that conclusion. In other words, this may go back, this may go back to the immigration judge and if they look at the facts under the right framework, they may conclude that there isn't a nexus. But the fact is that they didn't even take that analysis the way they should have and therefore could not have come to any conclusion without using the mixed motive framework. Well, I think the, the problem I have with that line of thought is that you apply a mixed motive analysis if, if it's, if in a case, if it's not clear. And that wasn't the case. Is that the case here? Well, no, the board found the motive was the fact that he, he was a witness to a crime who could identify the perpetrator. He had gone to the police and the, whoever perpetrated the crime didn't want the petitioner telling his story to the authorities. And they, that's what the board concluded. And certainly the evidence does not compel otherwise. Thank you very much. Thank you, Ms. Friedman. Mr. Brenner? Okay. If it would please the court, um, there is evidence in the record that petitioner's friend, Sammy Mooka was killed because of his political opinion. Um, on page 136 of the record, they ask him, and you believe that there was a murder of your friend was motivated for political reasons. He said, yes, I believe. They asked him, what's the basis for your belief? He says, because my friend told me that he was warned from this person that he should give up the membership in the youth forum and, and forum activities because he was going in a better direction. He was going, he was giving to his young life a bad direction. So that is why I believe. And he told you this, how soon before he was killed? He told me about the fact that two or three months before he was killed. Um, so this is a credible petitioner and, and he's stating that his friend was receiving death threats shortly before he was killed. Um, and then in addition, when you throw in the other facts that these were three youth group members going to a youth group, going to a house to discuss youth group activities, some of which were very distasteful to the government at that time, such as demonstrate demonstrations. Um, I think you, you can find your nexus. Um, I would just like to say one other thing. The government relies on INS verse Elias Zacharias to show the importance of motive, but that case is easy, easily distinguishable from the instant case. And Zacharias, the applicant had no political opinion, was attempting to remain neutral during a civil war. The guerrillas who sought to recruit him were not recruiting him or persecuting him for his political opinion. They were merely indiscriminately obtaining bodies to fight the military. Mr. Brennan, what about your cat clamp? Your Honor, I think, um, at the time, um, that, that, uh, that my petitioner fled the country, torture was prevalent. His father was tortured. Um, some of the some of the incidents that occurred to him rose to the level of torture. Um, and today may not be so easy to draw a connection to torture of Democratic Party members. But at that time, there certainly was anything further. Good, Mr Brennan. Thank you very much. Thank you. Thank Council for helpful argument. We'll take the matter under advisement.